**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Justin WEIGLE, Appellee.**

Superior Court of Pennsylvania.

Submitted Oct. 9, 2007.

Filed April 18, 2008.

Reargument Denied July 1, 2008.

---

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Furtunato N. Perri, Philadelphia, for appellee.

BEFORE: STEVENS, ORIE MELVIN and COLVILLE,* JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 This is a Commonwealth appeal from the Order granting a motion to quash robbery charges that were included in informations filed following a preliminary hearing wherein the robbery charges were previously discharged against Appellee, Justin Weigle, for failure to establish a *prima facie* case. The question presented by this appeal concerns whether or not robbery is a separate non-cognate offense to the crimes held over at the preliminary hearing. We find that it is and, therefore, affirm.

¶ 2 The facts and procedural history may be summarized as follows. On September 27, 2005, Ben Pontarelli, a loss-prevention agent employed by Walmart at its Franklin Mills Mall location in Philadelphia, observed Appellee use a box cutter to cut open a box containing a desktop computer and remove the connecting cables and the software bundle. Appellee placed the monitor cord in his pocket and walked away, carrying the software bundle under his arm. Once in the furniture department, Appellee rifled through the software bundle and put the Microsoft XP system recovery disc in his pocket, leaving the other software behind. Appellee then exited the store.

¶ 3 Mr. Pontarelli notified the assistant store manager, Deborah Evans, and together they confronted Appellee outside the store, approximately 15 to 20 feet from the exit. When they asked him to return

---

* Retired Senior Judge assigned to the Superior Court.

to the store, Appellee initially acted as if he would cooperate and then suddenly elbowed Mr. Pontarelli in the chest. Mr. Pontarelli reacted by grabbing Appellee's arm, and, in the ensuing altercation, Appellee produced a gun and pointed it at Ms. Evans' face. She yelled, "gun, gun," and Mr. Pontarelli released his grasp upon Appellee, who promptly fled. Mr. Pontarelli summoned the police, while other security personnel maintained surveillance of Appellee. Appellee was apprehended a short time later, and the police recovered a loaded semiautomatic handgun from his person. The items taken from the store were discarded but subsequently recovered and returned to Mr. Pontarelli, who identified them as the stolen items.

¶ 4 Appellee was charged by two separate criminal complaints with one count of retail theft, one count of theft, one count of receiving stolen property (RSP), and two counts of each of the following crimes: robbery, aggravated assault, simple assault, terrorists threats, recklessly endangering another person (REAP), possession of an instrument of crime (PIC) and violations of the uniform firearms act (VUFA). On December 6, 2005, a preliminary hearing was held before Municipal Court Judge Robert S. Blasi. At that time the Commonwealth stipulated that Appellee had a valid permit to carry a gun; therefore, the VUFA charges were withdrawn. Following the hearing, the court discharged the robbery counts for failure to establish a *prima facie* case.

■ ¶ 5 The Commonwealth subsequently re-arrested Appellee and re-filed the original charges pursuant to Philadelphia County Local Criminal Rule 500(H), which provides that, in such circumstances, the preliminary hearing following re-arrest is to be conducted by the judge assigned to the Common Pleas Motions Court. Consequently, on June 8, 2006, a preliminary hearing was held before the Honorable Joan A. Brown of the Common Pleas Motions Court, sitting as the issuing authority. Following the hearing, Judge Brown determined that a *prima facie* case was established only as to the counts of aggravated assault, retail theft, PIC, REAP and simple assault. The VUFA charges were again withdrawn by stipulation, and the robbery, theft, terroristic threats and RSP counts were discharged. Instead of appealing[1] Judge Brown's ruling, the Commonwealth subsequently filed criminal informations against Appellee for all the offenses held for court as well as all of the offenses that were discharged by Judge Brown.

¶ 6 On July 5, 2006, Appellee filed a Motion to Quash asserting that the information "charging [Appellee] with Robbery was prepared in violation of the law as the charge was dismissed by Judge Brown." Certified Record at D–1.[2] Following argument before the Honorable Pamela Dem-

---

1. Ordinarily, "[a] finding by a committing magistrate that the Commonwealth has failed to establish a *prima facie* case is not a final determination, such as an acquittal, and only entitles the accused to his liberty for the present, leaving him subject to rearrest." *Commonwealth v. Hetherington*, 460 Pa. 17, 22, 331 A.2d 205, 208 (1975). However, in this case Philadelphia County Local Criminal Rule 500(H) applied; therefore, the Commonwealth was authorized to appeal from the order of discharge at the re-arrest preliminary hearing because any subsequent re-arrest like-

wise would be heard by the same motions court. *See Commonwealth v. Prado*, 481 Pa. 485, 393 A.2d 8 (1978) (deeming such an order final for purposes of appeal).

2. We note that Appellee in his motion to quash did not challenge the inclusion in the information of the other offenses of theft, terroristic threats and RSP that were also discharged at the preliminary hearing of June 8, 2006.

be, the robbery counts were again dismissed. This appeal followed, wherein the Commonwealth certified in the notice of appeal, pursuant to Pa.R.A.P. 311(d), 42 Pa.C.S.A., that the order substantially handicapped the prosecution.

¶ 7 The Commonwealth presents the following question for our review:

Did the [trial] court err in dismissing robbery charges that were properly filed by the Commonwealth and for which the evidence of record was legally sufficient to establish a *prima facie* case?

Commonwealth's brief, at 3.

The decision to grant a motion to quash a criminal information or indictment "is within the sound discretion of the trial judge and will be reversed on appeal only where there has been a clear abuse of discretion." *Commonwealth v. Brown*, 423 Pa.Super. 264, 620 A.2d 1213, 1214 (Pa.Super.1993) (quoting *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 422 A.2d 1369, 1373 (Pa.Super.1980)). Discretion is abused when the course pursued by the trial court represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Commonwealth v. Smith*, 545 Pa. 487, [491,] 681 A.2d 1288, 1290 (Pa.1996).

*Commonwealth v. Lebron*, 765 A.2d 293, 294–295 (Pa.Super.2000), *appeal denied*, 567 Pa. 722, 786 A.2d 986 (2001).

¶ 8 The Commonwealth asserts that it was entitled to re-file the robbery charges that were dismissed following the preliminary hearing because robbery constituted a cognate offense to the other offenses for which the issuing authority had found a *prima facie* case.[3] The Commonwealth

relies upon *Commonwealth ex rel. Tanner v. Ashe*, 365 Pa. 419, 76 A.2d 210 (1950), to support its position.

¶ 9 In *Ashe*, following a coroner's inquest it was recommended that the defendant be held over for action by the grand jury on the charge of manslaughter. The District Attorney, however, prepared a bill of indictment charging murder and manslaughter. The defendant filed a writ of *habeas corpus* on the ground that he had been indicted on a crime different from that for which he had been held over to await action of the grand jury. The trial court refused the writ, and the defendant was subsequently convicted of first degree murder. On direct appeal to our Supreme Court his judgment of sentence was affirmed. The Supreme Court noted that "[i]t is established law that, when a prosecuting officer is satisfied from his investigations that a higher grade of offense, cognate to the one returned by the committing magistrate, is properly chargeable against a defendant, he may draw the bill accordingly...." *Id.* at 421, 76 A.2d at 211 (quoting *Maginnis' Case*, 269 Pa. 186, 195, 112 A. 555, 558 (1921)). The Supreme Court held that murder and manslaughter were cognate and, therefore, were properly joined in the bill of indictment.

¶ 10 Similarly, in *Commonwealth v. Epps*, 260 Pa.Super. 57, 393 A.2d 1010 (1978), defendant was charged in the complaint with robbery, aggravated assault and terroristic threats. At his preliminary hearing, at the request of his counsel, the magistrate substituted the charge of attempted robbery for the original robbery charge. The grand jury subsequently returned an indictment of robbery. On direct appeal to this Court, Epps claimed his counsel was ineffective for failing to move to quash the indictment as his due process

---

**3.** We note that the Appellee has not filed a   brief in this matter.

rights were allegedly infringed by the grand jury's returning an indictment of robbery after that charge had been dismissed at the preliminary hearing. We affirmed, noting that "it is clear that the crime charged in the indictment, robbery, was cognate to, and indeed identical with the charge imposed at the preliminary hearing, attempted robbery." *Id.* at 1011.

¶ 11 We further noted that re-arrest

is necessary only when all charges have been dismissed and no *prima facie* case established. It does not encompass situations, such as the instant case, in which a *prima facie* case has been established and a cognate crime is substituted in the indictment.

Similarly, if a *prima facie* case has been found on one offense, an indictment may not be had for a separate, non-cognate offense.

*Id.* at 1012.

¶ 12 Here, as in *Epps*, all of the charges filed against Appellee in the complaints were not dismissed at his preliminary hearing before Judge Brown. Rather the record reflects that Judge Brown, acting in the capacity as the issuing authority, determined that the Commonwealth established a *prima facie* case as to aggravated assault, retail theft, PIC, REAP and simple assault. Thus, our inquiry must center upon whether robbery is cognate to any of these charges that were held over for trial by Judge Brown.

¶ 13 The Commonwealth argues that robbery is cognate to the charges held for

court because "the same facts and circumstances that made out a *prima facie* case on those charges likewise established that [Appellee] also committed robbery." Commonwealth's brief, at 12–13. While this may be true, the argument misses the point of our inquiry at this juncture. A defendant is typically charged with having committed several discrete criminal acts, despite their having a close relationship and having occurred during in a single criminal episode. The Commonwealth's argument is circular as it turns upon its belief that a *prima facie* showing as to robbery was made at the preliminary hearing; however, that inquiry is not before us. If the Commonwealth wished to challenge that determination then it was required to appeal to this Court from the June 8, 2006 order pursuant to our Supreme Court's holding in *Prado, supra,* n. 1.

¶ 14 Furthermore, if we accept the Commonwealth's argument we would render the preliminary hearing meaningless as the Commonwealth would have free reign to ignore the issuing authority's determination as to a *prima facie* case and simply re-file the original charges by way of the criminal information. Rather, our instant inquiry only concerns the validity of the information. Specifically, we are charged with determining whether the added offense of robbery is a cognate offense to retail theft, aggravated assault, simple assault, PIC, or REAP. For the following reasons, we find that robbery is not a cognate offense but rather a separate and discrete criminal offense.[4]

**4.** The Dissent's rationale for finding a cognate offense is similarly misplaced in that it relies upon a quoted passage from *Sims, infra,* that is taken out of context. Unlike the instant case where the question we are charged with determining concerns whether the added offense of robbery is a cognate offense to any of the offenses held over for trial by the issuing authority, our Supreme

Court in *Sims* was only concerned with whether the defendant could be convicted of the lesser attempted escape offense when only the greater substantive escape offense was charged in the indictment. Noting that the settled law in Pennsylvania has been that a defendant may be convicted of an offense that is a lesser-included offense of the crime actually charged, the Supreme Court's focus was

¶ 15 In *Liciaga v. Court of Common Pleas of Lehigh County*, 523 Pa. 258, 566 A.2d 246 (1989) (plurality opinion), our Supreme Court described the procedure for instituting charges as follows:

> Under the procedure prescribed by rule in this Commonwealth, the institution of charges of violations of our Crimes Code is initiated by the issuance of an arrest warrant. The person charged is then brought before a committing magistrate. The Commonwealth is required to present evidence to establish a *prima facie* case that the accused committed the offenses for which he has been charged. The continuation of the prosecution is dependent upon the Commonwealth's ability to establish a *prima facie* case against the accused. The finding of a *prima facie* case is the prerequisite for requiring the accused to stand trial for the charges leveled against him. For this reason we have held that jeopardy does not attach until the prosecution has established a *prima facie* case and the accused is presented with the prospect of trial before a tribunal where his guilt or innocence will be determined.

*Id.* at 264, 566 A.2d at 248–49 (internal citations omitted).

¶ 16 Following the preliminary hearing where the defendant has been held for court, Pa.R.Crim.P. 560 dictates the contents of an information and, in relevant part, provides:

**Rule 560. Information: Filing, Contents, Function**

(A) After the defendant has been held for court, the attorney for the Common-

on determining what constitutes a lesser-included offense.

In making that determination the Supreme Court points out that there are "three varying approaches in [determining what constitutes a lesser-included offense]: the statutory-elements approach, the cognate-pleadings approach, and the evidentiary approach." *Commonwealth v. Sims*, 591 Pa. 506, 517, 919 A.2d 931, 938 (2007) (citing 5 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 24.8(e), at 576–84 (2d ed.1999)). In focusing upon the second approach the Dissent only quotes from the first part of the analysis and leaves out the concluding sentences which provide as follows:

> The focus of this approach is on the pleadings as the trial court must determine whether the allegations in the pleadings charging the greater offense include allegations of all of the elements of the lesser offense. If so, the lesser charge is considered a lesser-included offense of the greater charge.
>
> Significantly, the Supreme Court further noted that:
>
> [t]he question of whether an offense is a lesser-included offense of a greater crime arises in three separate contexts. First, as the question is presented here, the inquiry arises in situations where a defendant is convicted of a crime that was not actually charged. *See, e.g., Carter*, 393 A.2d at 661 (finding that because criminal trespass is not a lesser-included offense of burglary for notice purposes, defendants could not be convicted of criminal trespass where they had not been indicted for that crime). Second, the question arises in the context of sentencing, *i.e.*, whether the crimes merge for sentencing purposes. *See, e.g., Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 24 (Pa.1994) (finding that because aggravated assault is a lesser-included offense of attempted murder, the two offenses merge for sentencing purposes and defendant could not be sentenced separately for aggravated assault). Finally, the question is presented in the double jeopardy context, *i.e.*, whether imposing two sentences for the two crimes violates the Fifth Amendment's prohibition against being twice put in jeopardy for the same offense. *See, e.g., Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569, 570 (Pa.1981) (finding that sentence for robbery conviction violated the Double Jeopardy Clause because defendant had already been sentenced on felony-murder charge arising from same criminal episode).

*Sims*, at 518–519, 919 A.2d at 938–939. Clearly, the instant inquiry does not fall within any of the above-referenced categories.

wealth shall proceed by preparing an information and filing it with the court of common pleas.

(B) The information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:

* * * *

(5) a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint. . . .

Pa.R.Crim.P. 560, 42 Pa.C.S.A.

██ ¶ 17 Black's Law Dictionary defines a cognate offense as follows:

A lesser offense that is related to the greater offense because it shares several of the elements of the greater offense and is of the same class or category. ● For example, shoplifting is a cognate offense of larceny because both crimes require the elements of taking property with the intent to deprive the rightful owner of that property.

Black's Law Dictionary 1108 (7th ed.1999). Thus, in examining whether robbery is "substantially the same as or cognate to" any of the offenses held over for court we must analyze the essential elements of each of the crimes and determine whether they share several elements and are of the same class or category.

¶ 18 The Crimes Code provides, in relevant part, as follows:

§ 3701. Robbery.

(a) Offense defined.—

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

(v) physically takes or removes property from the person of another by force however slight.

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

(b) Grading.—Robbery under subsection (a)(1)(iv) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree.

18 Pa.C.S.A. § 3701.

¶ 19 The statutory provision defining retail theft provides as follows:

§ 3929. Retail theft

(a) Offense defined.—A person is guilty of a retail theft if he:

(1) takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof;

(2) alters, transfers or removes any label, price tag marking, indicia of value or any other markings which aid in determining value affixed to any merchandise displayed, held, stored or offered for sale in a store or other retail mercantile establishment and

attempts to purchase such merchandise personally or in consort with another at less than the full retail value with the intention of depriving the merchant of the full retail value of such merchandise;

(3) transfers any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment from the container in or on which the same shall be displayed to any other container with intent to deprive the merchant of all or some part of the full retail value thereof; or

(4) under-rings with the intention of depriving the merchant of the full retail value of the merchandise.

(5) destroys, removes, renders inoperative or deactivates any inventory control tag, security strip or any other mechanism designed or employed to prevent an offense under this section with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof.

18 Pa.C.S.A. § 3929.

¶ 20 The statutory provision defining felony aggravated assault reads:

(a) **Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1). The subsection defining misdemeanor aggravated assault includes this description of the act: "(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S.A. § 2702(a)(4). The elements of simple assault are the attempt "to cause or intentionally, knowingly or recklessly" cause "bodily injury to another," or negligently causing bodily injury to another with a deadly weapon, or the attempt to "put another in fear of imminent bodily injury." 18 Pa.C.S.A. § 2701(a).

¶ 21 The REAP offense is denied as follows:

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705. Finally, PIC is defined in the Crimes Code, in relevant part, as follows:

(a) **Criminal instruments generally.**—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

(b) **Possession of weapon.**—A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

\* \* \* \*

"**Instrument of crime.**" Any of the following:

(1) Anything specially made or specially adapted for criminal use.

(2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

"**Weapon.**" Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately

operable, and components which can readily be assembled into a weapon. 18 Pa.C.S.A. § 907.

¶ 22 In reviewing the essential elements of each offense we note that robbery clearly requires, as one of its elements, proof of a theft, and it appears that proof of any theft offense defined in Chapter 39 of the Crimes Code would be sufficient. However, robbery and retail theft, or any theft for that matter, are not of the same class or category of offenses to be considered cognate. Robbery bears only a secondary relationship to theft but is principally directed at protection of the person. The gravamen of the offense of robbery is an assault on a person when combined with the taking or attempted taking of money or property. Robbery evinces a primary concern for the threat to the safety of the individual inherent in the manner chosen by the perpetrator to accomplish the theft. *See Commonwealth v. Taylor*, 362 Pa.Super. 408, 524 A.2d 942, 948 (1987) (stating that "the robbery statute more specifically intends to punish those who threaten violence or resort to violent means in order to accomplish their goal of theft."). Whatever distant association the two offenses may have through their relationship to property crimes is simply too tenuous to allow us to conclude that they share sufficient similar elements and are of the same class or character to be considered cognate offenses.

¶ 23 Applying this analysis, we similarly find that aggravated assault, simple assault and REAP are not cognate offenses to robbery. We acknowledge that by enacting these statutes the Legislature intended to protect part of the same harm against which the robbery statute is intended to protect, *i.e.*, protection against infliction of bodily injury or fear thereof. However, we also recognize that the robbery statute contains the additional goal of protection of property, which the crimes against person statutes do not. *See id.* (stating "the aggravated assault statute and the robbery statute protect different interests of the Commonwealth as evidenced by the fact the Legislature has classified them separately under 'Offenses Involving Danger to the Person' (Title 18, Part II, art. B), and 'Offenses Against Property' (id. art. C.")). While these statutes and the robbery statute share some elements, they are not inherently related to one another to be said to be cognate. Each of these offenses could be accomplished without committing a robbery, and a robbery could be accomplished without committing any of the offenses involving danger to the person. Moreover, bodily injury need not actually occur nor does any person need to be placed in fear of such injury in order to be convicted of REAP. Rather, the thrust of the REAP statute is to provide criminal sanctions for the reckless creation of a risk of death or serious bodily injury. Model Penal Code § 211.2, Comment 1 (1980).

¶ 24 As concerns robbery and the offense of PIC the elements are different and the harms sought to be addressed are different. In *Commonwealth v. Williams*, 353 Pa.Super. 207, 509 A.2d 409 (1986), we explained the differences thusly:

The essential elements of robbery (as charged here) are that a theft be committed and that there be a threat of imminent serious bodily injury. [18 Pa. C.S.[A.] § 3701(a)(1)(ii) ]. Thus, the harm against which the statute protects is the deprivation of property by threatened or actual physical harm which may not involve any instrument of crime. The possession of implements of a crime charge, however, requires the possession of certain objects whose primary use is the commission of a crime and the intent to commit such a crime. By including

these elements in the crime, the legislature has indicated that the statute was enacted to protect against the threat that one who possesses certain objects will use them to commit a crime. *See Commonwealth v. Crocker*, 256 Pa.Super. 63, 389 A.2d 601 (1978). The Commonwealth's interest in the right of citizens to be free from the threat that an implement of crime will be used to accomplish a crime is separate from the Commonwealth's interest in protecting individuals from having their property rights jeopardized while being threatened with serious bodily injury.

*Id.* at 412.

¶ 25 In summation, we find that robbery is a non-cognate offense to any of the offenses held over for court because it does not serve a common purpose of protecting the same societal interest so as to be inherently related to those offenses as was the case with murder and manslaughter in *Ashe* and robbery and attempted robbery in *Epps*. Further, the offense added in this case cannot be said to be "similar in nature and spring[ing] from a common concern," as was the case in *Commonwealth v. Slingerland*, 358 Pa.Super. 531, 518 A.2d 266 (1986), where a charge under subsection (a)(4) of the former DUI statute, 75 Pa.C.S.A. § 3731, was added to the charge held over under subsection (a)(1). *See id.* at 268 (finding "[t]he substantive nature of the offenses is clearly the same, namely the operation of a vehicle after alcohol has been consumed to a degree which renders the operator a hazard to others and to himself or herself."), *disapproved on other grounds in Commonwealth v. McCurdy*, 558 Pa. 65, 73 n. 5, 735 A.2d 681, 686 n. 5 (1999). Thus, we cannot say that robbery is of the same class or category of any of those offenses that were held for court. Accordingly, we find that the trial court did not abuse its discretion in dismissing the robbery counts when the Commonwealth improperly included same in the criminal informations following their discharge by the issuing authority at the preliminary hearing.

¶ 26 Order affirmed.

¶ 27 STEVENS, J. files a dissenting opinion.

## DISSENTING OPINION BY STEVENS, J.:

¶ 1 After a careful review, I conclude that robbery is not a separate non-cognate offense in the case *sub judice*, and therefore, I conclude the Commonwealth properly added the charge of robbery to the criminal information. Therefore, I would reverse the order granting Appellee's motion to quash, and as such, I respectfully dissent.

¶ 2 As this Court stated in *Commonwealth v. Jacobs*, 433 Pa.Super. 411, 640 A.2d 1326, 1327–28 (1994):

There is no constitutional right, federal or state, to a preliminary hearing. Rather, a defendant's right to a preliminary hearing is conferred by the Rules of Criminal Procedure. The purpose of a preliminary hearing has been described by the Supreme Court in the following manner:

The preliminary hearing is not a trial. The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention. At this hearing, the Commonwealth bears the burden of establishing at least a prima facie case that a crime has been committed and that the accused is probably the one who committed it. It is not necessary for the Commonwealth to establish at this stage the accused's guilt beyond a reasonable doubt. In order

to meet its burden at the preliminary hearing, the Commonwealth is required to present evidence with regard to each of the material elements of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense.

A finding by a committing magistrate that the Commonwealth has failed to establish a prima facie case is not a final determination, such as an acquittal, and only entitles the accused to his liberty, for the present, leaving him subject to rearrest. In this regard, the Supreme Court has acknowledged that re-arrest is the appropriate procedure and the Commonwealth's only recourse where charges are dismissed and the defendant discharged upon a finding of a lack of a prima facie case since such a determination is interlocutory in nature and, therefore, not appealable. Pursuant thereto, [t]he prosecution may bring the matter again before any other officer empowered to hold a preliminary hearing.

(citations, quotations, and quotation marks omitted).

¶ 3 However, as acknowledged by the Majority:

[Re-arrest] is necessary only when all charges have been dismissed and no prima facie case established. It does not encompass situations ... in which a prima facie case has been established and a cognate crime is substituted in the indictment.

Similarly, if a prima facie case has been found on one offense, an indictment may not be had for a separate, noncognate offense.

*Commonwealth v. Epps*, 260 Pa.Super. 57, 393 A.2d 1010, 1012 (1978) (citation omitted).

¶ 4 In the case *sub judice*, as explained by the Majority, while Judge Brown, acting in the capacity as the issuing authority, dismissed the robbery charge, he concluded the Commonwealth had established a *prima facie* case for the offenses of aggravated assault, retail theft, PIC, REAP, and simple assault. Subsequently, the Commonwealth did not seek to re-arrest Appellee and take him before the issuing authority for a determination of a *prima facie* case; but rather, the Commonwealth sought to proceed pursuant to Pa. R.Crim.P. 560 by adding the robbery charge to the criminal information on the ground that it was a cognate offense to the other offenses, which were held over for trial. Contrary to the Majority, I conclude this was proper.

¶ 5 In determining whether offenses are cognate, there is "no requirement that the greater offense encompass all of the elements of the lesser offense. Rather, it is sufficient that the two offenses have certain elements in common." *Commonwealth v. Sims*, 591 Pa. 506, 518, 919 A.2d 931, 938 (2007). "It is established law that, when a prosecuting officer is satisfied from his investigations that a higher grade of offense, cognate to the one returned by the committing magistrate, is properly chargeable against a defendant, he may draw the bill accordingly." *Commonwealth v. Ashe*, 365 Pa. 419, 421, 76 A.2d 210, 211 (1950) (quotation, quotation marks, and emphasis omitted). As this Court has stated, the reason we require the added offense to be cognate is because "[a] defendant cannot be required to answer a charge different from or unrelated to the one for which he was arrested and held to bail." *Commonwealth v. Jacobs*, 433 Pa.Super. 411, 640 A.2d 1326, 1329 (1994) (quotation and citations omitted).

¶ 6 Here, I conclude that the offense of robbery is cognate to the offense of retail

theft. By its very definition, the crime of robbery provides that "[a] person is guilty of robbery if, in the course of committing a theft, he: ... (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury...." 18 Pa.C.S.A. § 3701(a)(1). The phrase "course of committing a theft" is deemed to have occurred where the act "occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2).[5] Here, the acts supporting a charge of robbery occurred during Appellee's flight after the commission of the retail theft. That is, after Appellee committed the acts which prompted the Commonwealth to charge him with retail theft, and Appellee was leaving the store with the merchandise, Appellee elbowed a loss prevention agent and pointed a gun at the assistant store manager's face. On this basis, I would find retail theft and robbery are cognate offenses.

¶ 7 I specifically disagree with the Majority's analysis, which concludes retail theft and robbery are separate non-cognate offenses since robbery includes the additional element of seeking to protect the victim from an assault. As indicated *supra*, there is no requirement that one offense encompass all of the elements of the other offense in order to be cognate. *Sims, supra.* Therefore, I respectfully dissent.[6]

---

**5.** I agree with the Majority's conclusion that robbery requires proof of a theft and it appears that proof of any theft offense defined in Chapter 39 of the Crimes Code will suffice.

**6.** In light of the aforementioned, I find it unnecessary to determine whether robbery is cognate to aggravated assault, REAP, PIC, or simple assault.